**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

OBADIAH OSEKO KEGEGE,

     Plaintiff,

v.

NAMESILO LLC, et al.,

     Defendants.

Civil Action No.: 8:20-cv-01066-TDC

**DEFENDANT GODADDY.COM, LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

By:  *s/ Chad E. Kurtz*
     CHAD E. KURTZ
     Maryland Bar No. 14102
     ckurtz@cozen.com
     **COZEN O'CONNOR**
     2001 M Street NW, Suite 500
     Washington, DC 20036
     Tel:  (202) 463-2521

     and

     JEFFREY M. MONHAIT
     (*Admitted pro hac vice*)
     jmonhait@cozen.com
     **COZEN O'CONNOR**
     One Liberty Place
     1650 Market Street, Suite 2800
     Philadelphia, PA 19103
     Tel:  (215) 665-2084

     *Attorneys for Defendant GoDaddy.com,*
     *LLC*

## TABLE OF CONTENTS

**Page**

I.    Introduction ..................................................................................................................1

II.   Background ..................................................................................................................2

      A.    Background On Domain Name Registrars ...................................................2

      B.    Plaintiff's Allegations ..................................................................................3

III.  Legal Standard ............................................................................................................4

IV.   Argument ....................................................................................................................6

      A.    Plaintiff Violated Fed. R. Civ. P. 8 By Lumping the Defendants Together ...........6

      B.    The CDA Bars Plaintiff's Claims Against GoDaddy ..................................6

      C.    Plaintiff Failed To State A Claim For Relief Against GoDaddy ..........................11

            1.    False Light Invasion of Privacy (Count I) ..................................11

            2.    Defamation Per Se (Count II) ......................................................12

            3.    Copyright Infringement (Count III) .............................................12

            4.    Blackmail and Extortion (Count IV)............................................15

            5.    Trolling, Cyber Harassment, and Cyberstalking (Count V) ...................16

            6.    Conspiracy Against Rights (Count VI)........................................16

            7.    Neglect to Prevent (Count VII)....................................................17

V.    Conclusion ...............................................................................................................19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*,
No. 10–03738, 2015 WL 5311085 (C.D. Cal. Sept. 10, 2015)....................................................3

*Alexander v. Hendrix*,
No. 14-2666, 2015 WL 3464145 (D. Md. May 29, 2015).......................................................16

*Am. Girl, LLC v. Nameview, Inc.*,
381 F. Supp. 2d 876 (E.D. Wis. 2005)..............................................................................2

*Am. Online, Inc. v. Huang*,
106 F. Supp. 2d 848 (E.D. Va. 2000) ................................................................................2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................5, 15

*Asia Econ. Inst. v. Xcentric Ventures LLC*,
No. 10-01360, 2011 WL 2469822 (C.D. Cal. May 4, 2011) ....................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................5

*Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*,
206 F.3d 980 (10th Cir. 2000) ...................................................................................7, 8

*Bey v. Shapiro Brown & Alt, LLP*,
997 F. Supp. 2d 310 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014) ..........................5

*Blake v. Maryland*,
No. 24-0697, 2024 WL 2053494 (D. Md. May 7, 2024).......................................................17

*Blocker v. Bandmine.com*,
No. 16-1709, 2017 WL 4287215 (D. Or. Aug. 25, 2017) *report and
recommendation adopted*, No. 16-1709, 2017 WL 4287470 (D. Or. Sept. 26,
2017) ...................................................................................................................2, 3

*Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*,
No. CV SAG-18-03384, 2021 WL 5359671 (D. Md. Nov. 17, 2021) ....................................15

*Capitol Records, Inc. v. MP3tunes, LLC*,
821 F. Supp. 2d 627 (S.D.N.Y. 2011)...............................................................................14

*Cartoon Network LP v. CSC Holdings, Inc.*,
536 F.3d 121 (2d Cir. 2008)..........................................................................................13

*Classen Immunotherapies, Inc. v. Biogen IDEC*,
    381 F. Supp. 2d 452 (D. Md. 2005) .........................................................................6

*Cok v. Cosentino*,
    876 F.2d 1 (1st Cir. 1989) .....................................................................................16

*CoStar Grp., Inc. v. LoopNet, Inc.*,
    373 F.3d 544 (4th Cir. 2004) ...........................................................................13, 14

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ..................................................................................5

*Davis v. Sarles*,
    134 F. Supp. 3d 223 (D.D.C. 2015) ......................................................................16

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ..................................................................................................5

*Fisher v. Nissel*,
    No. CV 21-5839-CBM-(KSx), 2022 WL 16961479 (C.D. Cal. Aug. 15, 2022)....................13

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019).................................................................................8, 17

*Foss v. Marvic Inc.*,
    994 F.3d 57 (1st Cir. 2021) ...................................................................................13

*Franklin v. X Gear 101, LLC*,
    2018 WL 4103492 (S.D.N.Y. Aug. 28, 2018) .........................................................9

*GoDaddy.com, LLC v. Toups*,
    429 S.W.3d 752 (Tex. Ct. App. 2014) .....................................................................9

*Hassell v. Bird*,
    420 P.3d 776 (Cal. 2018) ......................................................................................10

*Henderson v. Claire's Stores, Inc.*,
    607 F. Supp. 2d 725 (D. Md. 2009), *aff'd.*, 422 F. App'x 269 (4th Cir. 2011) ...............11, 12

*Hinton v. Amazon.com.dedc, LLC*,
    72 F. Supp. 3d 685 (S.D. Miss. 2014)......................................................................7

*Hoge v. Schmalfeldt*,
    No. ELH-14-1683, 2014 WL 3052489 (D. Md. July 1, 2014) ...............................13

*Hughes v. Opel*,
    No. JKB-23-1974, 2024 WL 1443329 (D. Md. Apr. 3, 2024) ...............................16

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*,
   790 F.3d 532 (4th Cir. 2015) ...................................................13

*Instructure, Inc. v. Canvas Techs., Inc.*,
   No. 2:21CV00454DAKCMR, 2022 WL 43829 (D. Utah Jan. 5, 2022).................................4

*InvenTel Prods., LLC v. Li*,
   406 F. Supp. 3d 396 (D. N.J. 2019) ...........................................14, 15

*Jones v. Twitter, Inc.*,
   No. RDB-20-1963, 2020 WL 6263412 (D. Md. Oct. 23, 2020)..........................7, 9

*Kelly v. Giant of Md. LLC*,
   No. 18-2495, 2019 WL 2502289 (D. Md. June 17, 2019).......................................5

*Kruska v. Perverted Just. Found. Inc.*,
   No. 08-0054, 2008 WL 2705377 (D. Ariz. July 9, 2008).........................................9

*Lee v. Meyers*,
   No. 21-1589, 2022 WL 252960 (D. Md. Jan. 27, 2022)...........................................6

*Lewis v. Google, Inc.*,
   No. 20-1784, 2021 WL 211495 (W.D. Pa. Jan. 21, 2021) ......................................7

*Lewis-Davis v. Baltimore Cnty. Pub. Sch. Infants & Toddlers Program*,
   No. 20-0423, 2021 WL 1720235 (D. Md. Apr. 30, 2021).......................................16

*Lockheed Martin Corp. v. Network Sols., Inc.*,
   985 F. Supp. 949 (C.D. Cal. 1997), *aff'd*, 194 F.3d 980 (9th Cir. 1999).................................2

*Majid v. Cnty. of Montgomery, Maryland*,
   No. 20-1517, 2021 WL 4441349 (D. Md. Sept. 28, 2021)....................................16

*McCrea v. Wells Fargo*,
   No. 18-2490, 2019 WL 2513770 (D. Md. June 17, 2019), *aff'd*, 852 F. App'x
   112 (4th Cir. 2021)........................................................................6

*Medytox Sols., Inc. v. Investorshub.com, Inc.*,
   152 So. 3d 727 (Fla. Dist. Ct. App. 2014) ..............................................10

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)..........................................................................15

*Mira Holdings Inc. v. UHS of Delaware Inc.*,
   No. CV-23-00169, 2023 WL 5333262 (D. Ariz. Aug. 18, 2023)............................3

*Moment v. Enter. Car Rental Corp.*,
   No. 23-cv-03505, 2024 WL 4349728 (D. Md. Sept. 30, 2024)............................16

*Myles v. Thompson*,
    No. 24-1710-BAH, 2024 WL 5239047 (D. Md. Dec. 27, 2024).......................................16, 17

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) .......................................................................... *passim*

*Obado v. Magedson*,
    612 F. App'x 90 (3d Cir. 2015) ...........................................................................8

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ...........................................................................14

*Pilz v. Pere*,
    No. 07-1226, 2008 WL 11512195 (E.D. Va. Mar. 5, 2008)...................................15

*Reaves v. Powers*,
    No. 21-3188, 2021 WL 4728779 (D.S.C. Oct. 8, 2021)........................................15

*Reed Elsevier, Inc. v. Muchnick*,
    559 U.S. 154 (2010)...........................................................................................13

*Ricci v. Teamsters Union Loc. 456*,
    781 F.3d 25 (2d Cir. 2015)....................................................................................9

*Rickert v. Francis*,
    No. 13-2326, 2015 WL 11120695 (D. Ariz. Jan. 27, 2015) ...........................7, 9, 10

*Rigsby v. GoDaddy Inc.*,
    59 F.4th 998 (9th Cir. 2023) ...........................................................................8, 9, 11

*Rolle v. Litkovitz*,
    No. 21-4034, 2022 WL 16753133 (6th Cir. May 12, 2022)...................................18

*Rolle v. Robel*,
    No. CV-23-00336-PHX-SMM, 2024 WL 342457 (D. Ariz. Jan. 30, 2024) ...................18, 19

*Rosen v. Imagevenue.com*,
    No. CV 13-01742, 2014 WL 12597124 (C.D. Cal. Jan. 29, 2014) ...........................3

*Sallen v. Corinthians Licenciamentos LTDA*,
    273 F.3d 14 (1st Cir. 2001)....................................................................................2

*Sellner v. Panagoulis*,
    565 F. Supp. 238 (D. Md. 1982), *aff'd*, 796 F.2d 474 (4th Cir. 1986) ...................18

*Silver v. Quora, Inc.*,
    666 F. App'x 727 (10th Cir. 2016) ........................................................................7

*Solid Host, NL v. NameCheap, Inc.*,
    652 F. Supp. 2d 1092 (C.D. Cal. 2009) ...................................................................3

*Solid Host, NL v. Namecheap, Inc.*,
    NO. CV 08-05414 MMM (Ex), 2009 WL 10671427 (C.D. Cal. June 16, 2009) ......................4

*Stebbins v. Polano*,
    No. 21-04184, 2022 WL 1601417 (N.D. Cal. Mar. 8, 2022) ...................................................7

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    676 F.3d 19 (2d Cir. 2011) ...................................................................14

*Wolk v. Kodak Imaging Network, Inc.*,
    840 F. Supp. 2d 724 (S.D.N.Y. 2012), *aff'd sub nom Wolk v.*
    *Photobucket.com, Inc.*, 569 Fed. App'x. 51 (2d Cir. 2014) ...................................................14

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ...................................................................6, 8, 17

**Statutes**

17 U.S.C. § 512(c) ...................................................................14

47 U.S.C. § 230(c)(1) ...................................................................6, 7

## I.    __INTRODUCTION__

The crux of Plaintiff Obadiah Oseko Kegege's ("Plaintiff") Second Amended Complaint (Doc. 71, the "SAC") is that unnamed individuals or entities (the "Doe Defendants") published alleged defamatory content about Plaintiff on approximately twenty websites totaling "103 internet links" (the "Websites"). *See* Doc. 71 ¶¶ 9-15, 24. Plaintiff named as defendants three individuals that he claims are associated with the Websites, as well as four domain name registrars with whom Plaintiff claims the individual defendants or other individuals registered the domain names associated with the Websites (the "Domains"). *See* Doc. 71.

Plaintiff's only allegation as to GoDaddy.com, LLC ("GoDaddy") is an allegation that GoDaddy is the domain registrar for three of the Domains (Plaintiff does not allege that GoDaddy hosted any of the Websites, or created any of the content on the Websites).[1] *Id.* at ¶ 13. Based on that single allegation, Plaintiff lumped in GoDaddy as a defendant with respect to each of the seven causes of action Plaintiff asserted against the defendants: (1) "false light invasion of privacy," (2) "defamation per se," (3) "intentional copyright infringement for financial gain," (4) "blackmail and extortion," (5) "trolling, cyber harassment, & cyberstalking," (6) a "conspiracy against rights" claim under 18 U.S.C. § 241, and (7) a "neglect to prevent" claim under 42 U.S.C. § 1986. *See* Doc. 71 at ¶¶ 40-82.

Each of Plaintiff's claims against GoDaddy, as well as his requests for damages and injunctive relief, fail as a matter of law and should be dismissed with prejudice. *First*, Plaintiff's

---

[1] Although Plaintiff also claims that GoDaddy "ignored or defied" a purported subpoena seeking information about the registrants of the three Domains allegedly registered with GoDaddy, *see* Doc. 71 ¶ 23, Plaintiff never served GoDaddy with any such subpoena. *See* Doc. 39 at 6-7 (holding that Plaintiff "ha[d] not established that he properly served the subpoena on" GoDaddy); Doc. 40 ¶ 7 (denying motion to compel response to subpoena due to lack of service). As this Court previously authorized Plaintiff to issue a limited subpoena to the registrars of the Domains, *see* Doc. 28, Plaintiff is welcome to issue and serve a subpoena consistent with the Court's order.

claims fail because Plaintiff improperly lumped the defendants together in violation of Rule 8 of the Federal Rules of Civil Procedure. *Second*, Section 230 of the Communications Decency Act ("CDA") bars most of Plaintiff's claims and requests for relief as against GoDaddy. *Third*, Plaintiff failed to state a claim for relief against GoDaddy. For all of these reasons, Plaintiff's SAC must be dismissed with prejudice as against GoDaddy.

## II.    BACKGROUND

### A.    Background On Domain Name Registrars

The internet is a network of interconnected computers. *See Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 18–19 (1st Cir. 2001). Each internet-connected computer must have a unique numeric address, known as an Internet Protocol or "IP" address. *See Am. Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 851 (E.D. Va. 2000); *Lockheed Martin Corp. v. Network Sols., Inc.*, 985 F. Supp. 949, 952 (C.D. Cal. 1997), *aff'd*, 194 F.3d 980 (9th Cir. 1999). IP addresses are strings of numbers that are difficult to remember, but the "Domain Name System" allows a more easily remembered word or phrase—the "domain name"—to be associated with an IP address. *See Am. Online*, 106 F. Supp. 2d at 851; *Lockheed*, 985 F. Supp. at 952.

"[T]o use a domain name in connection with a web site, the web site operator must register the name with one of a number of competing companies known as 'registrars.' Registrars accept domain name registrations on a first-come, first served basis." *Am. Girl, LLC v. Nameview, Inc.*, 381 F. Supp. 2d 876, 879 (E.D. Wis. 2005). A registrar's execution of its registration function is passive: if a domain is available, then the registrar's computers automatically handle the registration. *See id.* at 879. In contrast to domain name registration services, "[w]ebsite hosting services involve storing a website's underlying data on servers. By analogy, a domain name has the relationship to a host server that a street address has to a building." *Blocker v. Bandmine.com*, No. 16-1709, 2017 WL 4287215, at *5 (D. Or. Aug. 25, 2017), *report and recommendation*

2

*adopted*, No. 16-1709, 2017 WL 4287470 (D. Or. Sept. 26, 2017). A website host thus leases space on its servers to store customers' files for their websites. *See Blocker*, 2017 WL 4287215, at *5.

GoDaddy is a domain name registrar, meaning it manages the reservation of Internet domain names that members of the public register through GoDaddy. *See e.g.*, *Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, No. 10–03738, 2015 WL 5311085, at *1-2 (C.D. Cal. Sept. 10, 2015) ("*AMPAS*"). GoDaddy also offers numerous other online products and services designed to help "individuals and small businesses get online." *Id.* at *1.

Plaintiff's prior pleadings also appeared to include references to unidentified providers of domain privacy services. *See* Doc. 19 ¶ 6. Privacy service providers "allow domain name registrants concerned with maintaining their privacy to remain anonymous" by listing the provider's name and contact information in the WHOIS database entry for a given domain name. *See Solid Host, NL v. NameCheap, Inc.*, 652 F. Supp. 2d 1092, 1096 (C.D. Cal. 2009). Courts have recognized the "importance" of privacy services to protect privacy rights and avoid unwanted spam and online harassment. *See AMPAS*, 2015 WL 5311085, at *46 (privacy services are "indisputably legal"). *See also Mira Holdings Inc. v. UHS of Delaware Inc.*, No. CV-23-00169, 2023 WL 5333262, at *3 (D. Ariz. Aug. 18, 2023) ("registrants may properly conceal their identity through a domain privacy service"); *Rosen v. Imagevenue.com*, No. CV 13-01742, 2014 WL 12597124, at *4 (C.D. Cal. Jan. 29, 2014) (rejecting plaintiff's attempt to put "a sinister gloss on routine privacy services" because "[l]egitimate services are legitimate services").

### B.    Plaintiff's Allegations

Plaintiff alleges that the owners of the Websites published defamatory content about him on the Websites, and he claims that content harmed his personal and business reputation. Doc. 71 ¶¶ 9–39. With respect to the domain registrars, Plaintiff alleges that: (1) the individual defendants

allegedly registered the Domains with the registrars, and (2) the registrars allegedly did not "prevent or disable" the Websites, and (3) the registrars did not provide the registrant contact information for the Domains to Plaintiff.  *See id.* at ¶¶ 9-39.

Plaintiff does not allege that GoDaddy provided web hosting services for—or any content on—any of the Websites.  *See generally*, Doc. 71.  Rather, Plaintiff merely alleged that GoDaddy is the registrar for three of the Domains: cheaterexpose.com, exposecheater.com, and cheaterboard.com.  *See id.* at ¶ 13.  The publicly available WHOIS entries for those three domains indicate that cheaterexpose.com is registered with Non-party Wild West Domains, LLC, and exposecheater.com and cheaterboard.com are registered with GoDaddy.[2]

Plaintiff asserted seven claims against the defendants: (1) "false light invasion of privacy," (2) "defamation per se," (3) "intentional copyright infringement for financial gain," (4) "blackmail and extortion," (5) "trolling, cyber harassment, & cyberstalking," (6) a "conspiracy against rights" claim under 18 U.S.C. § 241, and (7) a "neglect to prevent" claim under 42 U.S.C. § 1986.  *See* Doc. 71 at ¶¶ 40-82.  Plaintiff seeks damages of over $4 million, an order to remove the content at issue from the Websites, and an order for the registrars to disclose the registrant contact information for the Domains.  *See id.* at pp. 16-27.

## III.  LEGAL STANDARD

To avoid a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim

---

[2] *See* ICANN Lookup, accessible at https://lookup.icann.org/en (last accessed January 10, 2025). The WHOIS database is "a centralized, publicly accessible database of information concerning all domain names in a TLD."  *Solid Host, NL v. Namecheap, Inc.*, NO. CV 08-05414 MMM (Ex), 2009 WL 10671427, at *1 (C.D. Cal. June 16, 2009).  "TLD" means "top level domain," such as .com, .org, or .gov. *See id.* It is well established that "courts have taken judicial notice of facts regarding the registration of a domain, including WHOIS records." *Instructure, Inc. v. Canvas Techs., Inc.*, No. 2:21CV00454DAKCMR, 2022 WL 43829, at *18 (D. Utah Jan. 5, 2022) (collecting cases).

to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). *See also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action…do not suffice."); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) ("'[W]e need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions or arguments.'") (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). "[T]o survive a motion to dismiss, a complaint's factual allegations 'must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Kelly v. Giant of Md. LLC*, No. 18-2495, 2019 WL 2502289, at *3 (D. Md. June 17, 2019) (quoting *Twombly*, 550 U.S. at 555).

Additionally, while a *pro se* plaintiff's pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted), "liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014). Even under this less stringent standard, Plaintiff failed to state a plausible claim for relief against GoDaddy.

## IV.    ARGUMENT

### A.    Plaintiff Violated Fed. R. Civ. P. 8 By Lumping the Defendants Together

Plaintiff's allegations are entirely deficient as to GoDaddy.  Plaintiff does not distinguish between GoDaddy's alleged conduct as a domain registrar and the conduct of any of the other defendants, and routinely refers collectively to groups of unidentified "Defendants."  *See, e.g.*, Doc. 71 ¶¶ 45-47, 50-51, 53, 56, 61-65, 68, 73.  Such allegations violate Rule 8's requirement for "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint is deficient under Rule 8 when it "lumps all the defendants together and fails to distinguish their conduct."  *See Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F. Supp. 2d 452, 455 (D. Md. 2005) (citing *Appalachian Enterprises, Inc. v. ePayment Sols.*, Ltd., No. 01-11502, 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004)).  Courts regularly hold that *pro se* complaints "marred by 'shotgun pleading,' … warrant dismissal."  *McCrea v. Wells Fargo*, No. 18-2490, 2019 WL 2513770, at *7 (D. Md. June 17, 2019), *aff'd*, 852 F. App'x 112 (4th Cir. 2021) (citation omitted); *see also Lee v. Meyers*, No. 21-1589, 2022 WL 252960, at *11 (D. Md. Jan. 27, 2022); (holding "the Federal Rules of Civil Procedure do not countenance … 'shotgun pleading'"). Plaintiff failed to make discrete allegations against GoDaddy, instead impermissibly lumping the defendants together.  Plaintiff's failure to abide by basic pleading standards warrants dismissal.

### B.    The CDA Bars Plaintiff's Claims Against GoDaddy

The CDA protects a provider of an interactive computer service, including domain name registrars and web hosting providers, from liability for information or content "provided by another information content provider."  47 U.S.C. § 230(c)(1).  "By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."  *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).  *See also, e.g., Nemet*, 591 F.3d  at 254 (The CDA "bar[s] state-law plaintiffs from

holding interactive computer service providers legally responsible for information created and developed by third parties."); *Silver v. Quora, Inc.*, 666 F. App'x 727, 729 (10th Cir. 2016); *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 984–85 (10th Cir. 2000). Specifically, 47 U.S.C. § 230(e)(3) broadly provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.*

As courts across the country have recognized, this "expansive scope of CDA immunity" encompasses not only "state tort claims" and "alleged violations of state statutory law," but also bars "requests for injunctive relief." *Hinton v. Amazon.com.dedc, LLC*, 72 F. Supp. 3d 685, 689 (S.D. Miss. 2014); *accord Ben Ezra*, 206 F.3d at 986 (applying CDA immunity to claims for injunctive relief); *Stebbins v. Polano*, No. 21-04184, 2022 WL 1601417, at *3 (N.D. Cal. Mar. 8, 2022) (plaintiff's requested injunction "would run afoul of Section 230 of the [CDA], which immunizes service providers from liability for publishing content provided by third parties"); *Lewis v. Google, Inc.*, No. 20-1784, 2021 WL 211495, at *3 (W.D. Pa. Jan. 21, 2021) ("§ 230 immunity has been found to bar injunctive relief"); *Rickert v. Francis*, No. 13-2326, 2015 WL 11120695, at *2 (D. Ariz. Jan. 27, 2015) (same); *Asia Econ. Inst. v. Xcentric Ventures LLC*, No. 10-01360, 2011 WL 2469822, at *7 (C.D. Cal. May 4, 2011) ("Because Defendants are not accountable for [allegedly defamatory] postings under the CDA, they can not be liable for their effects in tort, and injunctive relief is similarly unavailable.").

Section 230(c) immunity applies when (1) the defendant is a provider or user of an interactive computer service, (2) the asserted claims treat the defendant as the publisher or speaker of the information, and (3) the information is provided by another information content provider. *See* 47 U.S.C. § 230(c)(1); *accord Silver*, 666 F. App'x at 729; *Jones v. Twitter, Inc.*, No. RDB-20-1963, 2020 WL 6263412, at *3 (D. Md. Oct. 23, 2020). "The CDA reflects Congress's decision

not to treat providers of interactive computer services like other information providers, such as newspapers, magazines or television and radio stations, all of which may be held liable for publishing or distributing defamatory material written by others." *Obado v. Magedson*, 612 F. App'x 90, 93 (3d Cir. 2015); *accord Zeran*, 129 F.3d at 331 ("§ 230 forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions."); *Ben Ezra*, 206 F.3d at 986 (same). *See also Force v. Facebook, Inc.*, 934 F.3d 53, 57 (2d Cir. 2019) (affirming grant of motion to dismiss federal anti-terrorism claims against Facebook, explaining that "the district court properly applied Section 230(c)(1) to plaintiffs' federal claims").

The CDA bars Plaintiff's claims against GoDaddy except for Plaintiff's copyright claim and Plaintiff's purported claims concerning the enforcement of a federal criminal statute (which fail for other reasons, as set forth below). First, Plaintiff's sole allegation as to GoDaddy is an allegation that GoDaddy is the registrar for three of the Domains. *See* Doc. 71 ¶ 13. "As a domain name registrar … GoDaddy … provides an interactive computer service" under the CDA. *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1008 (9th Cir. 2023). Second, Plaintiff plainly seeks to treat GoDaddy as the speaker or publisher of the content on the Websites by seeking injunctive relief against GoDaddy, or an order otherwise holding GoDaddy liable for the content on the Websites. Third, it is undisputed that GoDaddy did not create any of the content on the Websites. *See generally* Doc. 71. Plaintiff does not suggest that GoDaddy contributed to the content of the Websites in any way, and Plaintiff expressly concedes that the owners of the Websites—not GoDaddy—are responsible for the contents of the Websites. Doc. 71 ¶ 13 (alleging the owners of the Websites "publish[ed] false and highly defamatory content"). Accordingly, even accepting Plaintiff's well-pled allegations as true, GoDaddy is entitled to CDA immunity on the face of the

SAC. *See Nemet*, 591 F.3d at 257-58 (affirming dismissal of claims under CDA where Plaintiff failed to allege that interactive computer service provider developed or created the content at issue); *Jones*, 2020 WL 6263412, at *3-4 (same).

Courts across the country have affirmed GoDaddy's CDA immunity in analogous cases. *See, e.g., Rigsby*, 59 F.4th at 1008–09 (affirming dismissal of state law claims against GoDaddy because of GoDaddy's CDA immunity as "a domain name registrar"); *Ricci v. Teamsters Union Loc. 456*, 781 F.3d 25, 28 (2d Cir. 2015) (CDA barred defamation claims against GoDaddy based on statements someone else published on a website hosted on GoDaddy's servers because the CDA "shields GoDaddy from publisher liability (with respect to web content provided by others) in its capacity as a provider of an interactive computer service"); *Kruska v. Perverted Just. Found. Inc.*, No. 08-0054, 2008 WL 2705377, at *2-3 (D. Ariz. July 9, 2008) (dismissing with prejudice plaintiffs' state law claims because of GoDaddy's CDA immunity "as a web host"); *see also Franklin v. X Gear 101, LLC*, 2018 WL 4103492, at *8 (S.D.N.Y. Aug. 28, 2018) (dismissing claims against GoDaddy based on the CDA's "broad-based immunity to defendants who are providers of interactive computer services from certain state law claims"); *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 758–59 (Tex. Ct. App. 2014) (holding that plaintiffs could not maintain claims against GoDaddy that treated it as a publisher of material when GoDaddy acted only as an interactive computer service provider and not an information content provider).

Several additional cases are also instructive. In *Rickert*, for example, the plaintiff brought claims for injunctive relief against an interactive computer service provider based on alleged defamatory content published on the defendant's websites. 2015 WL 11120695, at *1. The Court held that CDA immunity barred the plaintiff's claims, and explained: "Plaintiff's remedy is a suit for money damages against the defendant legally liable for the harm caused by the defamation, not

9

an injunction against a third party which is immune from suit." *Id.* Here, as in *Rickert*, Plaintiffs' remedy for the alleged defamatory publications is a claim for defamation against the individuals or entities that created the content at issue—and not an injunction against GoDaddy, which is immune from suit. *See Nemet*, 591 F.3d at 254 ("State-law plaintiffs may hold liable the person who creates or develops unlawful content, but not the interactive computer service provider who merely enables that content to be posted online."); *Medytox Sols., Inc. v. Investorshub.com, Inc.*, 152 So. 3d 727, 731 (Fla. Dist. Ct. App. 2014) ("An action to force a website to remove content on the sole basis that the content is defamatory is necessarily treating the website as a publisher, and is therefore inconsistent with section 230.").

Meanwhile, in *Hassell v. Bird*, 420 P.3d 776 (Cal. 2018), the California Supreme Court went even further. There, the defendants posted alleged defamatory reviews on the website accessible at Yelp.com, but the plaintiff did not name Yelp as a defendant. *Id.* at 778. After obtaining a default judgment against the defendants, the plaintiffs obtained an order requiring Yelp to remove the defamatory content. *Id.* Even though Yelp was not a defendant, the California Supreme Court held that Yelp was entitled to CDA immunity and invalidated the takedown order. *Id.* at 788–793. Rejecting the plaintiffs' attempted end-run around CDA immunity, the *Hassell* Court "rebuffed [the plaintiffs'] attempts to avoid section 230 through the 'creative pleading' of barred claims" because the removal order nevertheless "treats an Internet intermediary 'as the publisher or speaker of any information provided by another information content provider"—and thus fell squarely within CDA immunity. *Id.* at 789. If the plaintiffs in *Hassell* could not circumvent CDA immunity by obtaining an indirect order against the interactive computer service provider, Plaintiff here has no basis to try to circumvent CDA immunity by bringing plainly barred claims against GoDaddy directly.

10

Because GoDaddy is entitled to CDA immunity, Plaintiff's claims against GoDaddy (aside from Plaintiff's copyright and criminal claims, which fail for other reasons as discussed below) must be dismissed with prejudice. *See Rigsby*, 59 F.4th at 1009 (affirming grant of motion to dismiss plaintiff's claims against GoDaddy where the CDA barred such claims).

### C.     Plaintiff Failed To State A Claim For Relief Against GoDaddy

#### 1.     False Light Invasion of Privacy (Count I)

The CDA bars Plaintiff's false light invasion of privacy claim against GoDaddy, so the Court does not need to reach any further issue on this claim. However, as an additional basis for dismissal, Plaintiff also failed to allege this claim as against GoDaddy. "Under Maryland law, to prove a claim of false light invasion of privacy, a plaintiff must show (1) that the defendant gave publicity to a matter that places the plaintiff before the public in a false light; (2) that a reasonable person would find that the false light in which the other person was placed highly offensive to a reasonable person; and (3) that the defendant had knowledge of or acted with reckless disregard as to the falsity of the publicized matter and the false light in which the defendant placed the plaintiff." *Henderson v. Claire's Stores, Inc.*, 607 F. Supp. 2d 725, 733 (D. Md. 2009), *aff'd.*, 422 F. App'x 269 (4th Cir. 2011).

Here, Plaintiff failed to allege that GoDaddy (a) "gave publicity" to any content at issue, or (b) "had knowledge of or acted with reckless disregard as to the falsity of the publicized matter." Plaintiff alleged only that GoDaddy is the registrar of three of the Domains. *See* Doc. 71 ¶ 13. Plaintiff does not contend that GoDaddy created any of the allegedly offensive content on the Websites, or that GoDaddy hosted any of the Websites, or even that GoDaddy knew about the alleged content on the Websites or the alleged falsity of any such content. Rather, Plaintiff plainly alleged that the owners of the Websites created and "published" the content at issue. *See id.* Therefore, Plaintiff failed to state a claim against GoDaddy for false light invasion of privacy.

11

### 2.    Defamation Per Se (Count II)

The CDA bars Plaintiff's defamation claim against GoDaddy, so the Court does not need to reach any further issue on this claim.  However, as an additional basis for dismissal, Plaintiff also failed to allege this claim as against GoDaddy.  To state a defamation claim under Maryland law, a plaintiff who is not a public figure must show: "(1) that the defendant made a defamatory communication, *i.e.*, that [it] communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm."  *Henderson*, 607 F. Supp. 2d at 730–31.  When the "injurious character of the words is self-evident," a statement is defamatory per se.  A statement that is defamatory per se satisfies the first element, and the fourth element, damages, is presumed.  *Id.* at 730-32.

Plaintiff failed to allege any of these elements with respect to GoDaddy.  Plaintiff does not allege that GoDaddy made any communication (much less a defamatory one), that any such communication was false, or that Plaintiff was allegedly harmed as a result of any communication Plaintiff attributes to GoDaddy.  *See generally* Doc. 71.  Plaintiff's claim of defamation per se must be dismissed with prejudice as against GoDaddy.

### 3.    Copyright Infringement (Count III)

Plaintiff's copyright infringement claim must be dismissed as against GoDaddy for at least three reasons.  First, Plaintiff failed to allege that he has a protected copyright. Second, Plaintiff failed to allege that GoDaddy engaged in volitional conduct that violates Plaintiff's protected copyright, because the mere provision of domain registration services is not volitional conduct that triggers copyright liability.  Third, if Plaintiff's claim is for indirect infringement, the SAC does

not include allegations sufficient to state such a claim.  This claim should be dismissed with prejudice.

*First*, Plaintiff failed to allege that he has a protected copyright.  A claim for copyright infringement requires proof of two elements: (1) ownership of a valid copyright, and (2) an unauthorized copying of the protected material.  *See Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 537 (4th Cir. 2015).  "Subject to certain exceptions, the Copyright Act (Act) requires copyright holders to register their works before suing for copyright infringement."  *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010) (citing 17 U.S.C. § 411(a)).  *See also Hoge v. Schmalfeldt*, No. ELH-14-1683, 2014 WL 3052489, at *8 (D. Md. July 1, 2014) ("registration of a copyright remains a precondition to filing a copyright suit").  Plaintiff alleged in a conclusory fashion that he "owns the Copyright" to a photo of Plaintiff that allegedly appeared on certain of the Websites, *see* Doc. 71 ¶ 26(b), 53(a), but Plaintiff did not allege that he registered the photo or otherwise offer allegations to satisfy the registration requirement.  As a result, Plaintiff's copyright claim fails.  *See, e.g. Foss v. Marvic Inc.*, 994 F.3d 57, 62 (1st Cir. 2021) (affirming grant of motion to dismiss copyright claim where plaintiff "did not register her copyright before filing suit"); *Fisher v. Nissel*, No. CV 21-5839-CBM-(KSx), 2022 WL 16961479, at *5-6 (C.D. Cal. Aug. 15, 2022) (granting motion to dismiss copyright claim where plaintiff failed to allege registration of copyright prior to filing suit).

*Second*, Plaintiff failed to allege that GoDaddy copied the alleged photograph at issue or engaged in any volitional conduct related to the alleged infringement.  A claim for direct infringement requires "some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party."  *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 130 (2d Cir. 2008).  *See also CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544,

13

551 (4th Cir. 2004) (a defendant must "engage in volitional conduct—specifically, the act constituting infringement—to become a direct infringer").  In *CoStar*, the Fourth Circuit expressly held that "ISPs, when passively storing material at the direction of users in order to make that material available to other users upon their request, do not 'copy' the material in direct violation of § 106 of the Copyright Act."  *CoStar Grp., Inc.*, 373 F.3d at 555.  Here, Plaintiff does not allege that GoDaddy copied or used Plaintiff's photograph, or engaged in any infringing conduct.  Instead, Plaintiff merely alleged that GoDaddy is the registrar for three of the Domains associated with the Websites that other defendants utilized to publish allegedly infringing photos.  *See InvenTel Prods., LLC v. Li*, 406 F. Supp. 3d 396, 403 (D. N.J. 2019) (granting motion to dismiss copyright claim, explaining that, "GoDaddy, as a domain name registrar, does not 'copy' Plaintiff's work for even a transitory duration, like an ISP does.").  Therefore, Plaintiff failed to allege volitional conduct by GoDaddy to support a direct infringement claim.[3]

*Third*, the SAC does not contain any claim for indirect infringement, but even if Plaintiff attempted to assert such a claim, it would fail as a matter of law.  "One infringes contributorily by

---

[3] Even if Plaintiff tried to allege that GoDaddy hosted any of the Websites, Plaintiff's claim would remain incurably deficient because GoDaddy would be entitled to the protections of the safe harbor provision in the Digital Millennium Copyright Act of 1998 ("DMCA").  *See* 17 U.S.C. § 512(c); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 27 (2d Cir. 2011).  Plaintiff has not, and cannot, allege that it provided GoDaddy with a DMCA-compliant notice, which must include, among other requirements, a statement that the complainant has a "good faith belief" that the use complained of was unauthorized, and "that the information in the notification is accurate, and under penalty of perjury."  *See* 17 U.S.C. § 512(c)(3)(A)(v-vi).  Thus, the DMCA "requires a complainant to declare, under penalty of perjury, that he is authorized to represent the copyright holder, and that he has a good-faith belief that the use is infringing.  This requirement is not superfluous."  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1112 (9th Cir. 2007).  Notices that do not comply with the DMCA cannot establish actual knowledge of infringement.  *See Capitol Records, Inc. v. MP3tunes, LLC*, 821 F. Supp. 2d 627, 644-45 (S.D.N.Y. 2011).  *See also* 17 U.S.C. § 512(c)(3)(B); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 747 (S.D.N.Y. 2012), *aff'd sub nom Wolk v. Photobucket.com, Inc.*, 569 Fed. App'x. 51 (2d Cir. 2014) (A service provider "cannot be held liable for its failure to remove images for which the Plaintiff failed to provide proper notice.").

intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).  Neither theory can succeed without some form of direct infringement by a party.  *See Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*, No. CV SAG-18-03384, 2021 WL 5359671, at *23 n.11 (D. Md. Nov. 17, 2021) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.") (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001)).  As discussed above, Plaintiff failed to state a claim for direct infringement because he failed to provide factual allegations sufficient to satisfy the registration requirement, and thus cannot set forth a claim for indirect infringement against GoDaddy.  Plaintiff also cannot allege GoDaddy is inducing any purported infringement, as such an allegation would be insufficient as a matter of law, *see Iqbal*, 556 U.S. at 678, and the mere provision of domain registration services is insufficient to state a claim for indirect infringement.  *See, e.g., InvenTel*, 406 F. Supp. 3d at 403 (dismissing indirect infringement claim because domain registration services "did not materially contribute to any copyright infringement taking place at the time of registration").  This claim should be dismissed.

### 4.    Blackmail and Extortion (Count IV)

Plaintiff's "Blackmail and Extortion" claim under 18 U.S.C. § 873 must be dismissed because there is no private right of action under this criminal statute.  *Reaves v. Powers*, No. 21-3188, 2021 WL 4728779, at *3 (D.S.C. Oct. 8, 2021) (dismissing 18 U.S.C. § 873 claim because it "does not provide a private right of action," and holding that a plaintiff "cannot sue to enforce rights under criminal statutes"); *Pilz v. Pere*, No. 07-1226, 2008 WL 11512195, at *2 (E.D. Va. Mar. 5, 2008) (holding that federal law does not contain a private right of action for extortion).  Furthermore, even if Plaintiff had a viable "blackmail" or "extortion" claim against any of the

defendants for allegedly directing Plaintiff to make a payment to remove the allegedly defamatory content, Plaintiff does not allege that GoDaddy had any part in that purported conduct. *See* Doc. 71 ¶¶ 56. Plaintiff's claim of blackmail and extortion must be dismissed.

### 5.    Trolling, Cyber Harassment, and Cyberstalking (Count V)

Plaintiff's "Trolling, Cyber Harassment, and Cyberstalking" claim under 18 U.S.C. § 2261A(2) also fails because there is no private right of action under that criminal statute. *See Majid v. Cnty. of Montgomery, Maryland*, No. 20-1517, 2021 WL 4441349, at *2 (D. Md. Sept. 28, 2021) (dismissing § 2261A claim because "there is no private right of action"); *Lewis-Davis v. Baltimore Cnty. Pub. Sch. Infants & Toddlers Program*, No. 20-0423, 2021 WL 1720235, at *18 (D. Md. Apr. 30, 2021) (same); *Alexander v. Hendrix*, No. 14-2666, 2015 WL 3464145, at *3 (D. Md. May 29, 2015) (same). Therefore, this claim must be dismissed with prejudice.

### 6.    Conspiracy Against Rights (Count VI)

Plaintiff's "Conspiracy Against Rights" claim under 18 U.S.C. § 241 also fails because there is no private right of action under that criminal statute. *See, e.g., Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("Generally, a private citizen has no authority to initiate a federal criminal prosecution. Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241–242.") (internal citation omitted); *Myles v. Thompson*, No. 24-1710-BAH, 2024 WL 5239047, at *4 (D. Md. Dec. 27, 2024) ("18 U.S.C. § 241 (conspiracy against rights) and 18 U.S.C. § 242 (deprivation of rights under color of law) are federal criminal statutes that do not create a private right of action."); *Moment v. Enter. Car Rental Corp.*, No. 23-cv-03505, 2024 WL 4349728, at *7 (D. Md. Sept. 30, 2024) (same); *Hughes v. Opel*, No. JKB-23-1974, 2024 WL 1443329, at *10 (D. Md. Apr. 3, 2024) (18 U.S.C. § 241 "is a criminal statute without a private cause of action"); *Davis v. Sarles*, 134 F. Supp. 3d 223, 228 (D.D.C. 2015) (plaintiff's claim under 18 U.S.C. § 241 "fails

16

as a matter of law since those federal criminal statutes do not create a private right of action"). Therefore, this claim must be dismissed with prejudice.

       7.    <u>Neglect to Prevent (Count VII)</u>

GoDaddy respectfully submits that the CDA bars Plaintiff's claim under 42 U.S.C. § 1986. *See, e.g., Force*, 934 F.3d at 57 (affirming grant of motion to dismiss federal anti-terrorism claims against Facebook, explaining that Section 230(c)(1) "properly applied" to "plaintiffs' federal claims"). In the interest of candor, GoDaddy has not identified any case in which a court addressed the CDA's applicability to a Section 1986 claim, but "[t]o further the policies underlying the CDA, courts have generally accorded § 230 immunity a broad scope." *Nemet*, 591 F.3d at 254. Therefore, for the same reasons Courts across the country have held that the CDA bars claims that seek to hold interactive service providers liable for third-party content, the CDA bars this claim. *See, e.g., Zeran*, 129 F.3d at 330 (4th Cir. 1997) ("By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.").

In any event, Plaintiff's claim under 42 U.S.C. § 1986 claim also fails as a matter of law because, among other reasons, Plaintiff cannot allege a predicate § 1985 claim. Section 1986 provides a cause of action against persons who have "knowledge of, and power to prevent, a [42 U.S.C.] § 1985 conspiracy, but neglects or refuses to act." *Blake v. Maryland*, No. 24-0697, 2024 WL 2053494, at *2 (D. Md. May 7, 2024) (citation omitted). A § 1986 claim is thus "dependent upon the existence of a claim under § 1985." *See id.* (citation omitted). *See also Myles*, 2024 WL 5239047, at *4.

Section 1985 is split into three subsections. Section 1985(1) creates a cause of action for conspiring by "force, intimidation, or threat" to obstruct an officer of the United States from performing their duties. Plaintiff has not alleged that he is an officer, or that GoDaddy conspired

with the owners of the Websites, or that GoDaddy conspired to use "force, intimidation, or threat" against him. *See Sellner v. Panagoulis*, 565 F. Supp. 238, 245 (D. Md. 1982), *aff'd*, 796 F.2d 474 (4th Cir. 1986) (dismissing § 1985(1) claim because the plaintiff was not subjected to any "force, intimidation, or threat," and he was not an officer).  He thus has not alleged a claim under § 1985(1).

Section 1985(2) contains several causes of action, which are split into two main subparts. First, § 1985(2) creates a cause of action for conspiring by "force, intimidation, or threat" to deter a witness from testifying "freely, fully and truthfully," or to influence a "verdict, presentment, or indictment of any … juror."  Plaintiff has neither alleged that he is a witness or juror to a court proceeding, nor that GoDaddy conspired to use "force, intimidation, or threat" against him.  *See Sellner*, 565 F. Supp. at 246 (dismissing § 1985(2) claim because plaintiff was not subjected to any "force, intimidation, or threat," he was not prevented in any way from testifying as a witness, and he was not a juror).  Second, § 1985(2) also creates a cause of action for conspiring to obstruct "the due course of justice" with "intent to deny to any citizen the equal protection of the laws, or to injury him … for lawfully enforcing … the equal protection of the laws." Both parts of § 1985(2) require allegations that the defendant was "motivated by racial or other class-based, invidiously discriminatory animus."  *Sellner*, 565 F. Supp. at 246.  There are no allegations in the Amended Complaint of such motivation by GoDaddy (or any defendant), and Plaintiff's conclusory allegation "that there are acts of a hate crime or a form of Modern-Day Lynching," Doc. 71 ¶ 73, is entitled to no weight, and otherwise insufficient to satisfy this element.  *See, e.g., Rolle v. Litkovitz*, No. 21-4034, 2022 WL 16753133, at *2 (6th Cir. May 12, 2022) (affirming dismissal of Section 1985 claim, explaining that "vague and conclusory allegations" that a defendant "acted with race-based discriminatory animus" are not sufficient to state a Section 1985 claim); *Rolle v.*

18

*Robel*, No. CV-23-00336-PHX-SMM, 2024 WL 342457, at *4 (D. Ariz. Jan. 30, 2024) (plaintiff failed to state a claim under Section 1985 where "[n]o race-based conspiracy was suggested beyond Plaintiff's unsupported allegations of white supremacy"). Plaintiff has thus failed to allege a claim under § 1985(2).

Finally, § 1985(3) creates a similar cause of action to the second part of § 1985(2), in that it requires allegations of "racial or … otherwise class-based, invidiously discriminatory animus." *Id.* Because Plaintiff failed to allege any such motivation by GoDaddy (or any defendant), Plaintiff has thus failed to allege a claim under § 1985(3). With no predicate § 1985 claim, Plaintiff's § 1986 claim should be dismissed with prejudice.

## V. <u>CONCLUSION</u>

For any and all of the reasons set forth above, GoDaddy's motion should be granted, and Plaintiff's claims against GoDaddy should be dismissed with prejudice.

Respectfully submitted,

By:  *s/ Chad E. Kurtz*_____
CHAD E. KURTZ
Maryland Bar No. 14102
ckurtz@cozen.com
**COZEN O'CONNOR**
2001 M Street NW, Suite 500
Washington, DC 20036
Tel:  (202) 463-2521

and

JEFFREY M. MONHAIT
(*Admitted pro hac vice*)
jmonhait@cozen.com
**COZEN O'CONNOR**
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel:  (215) 665-2084

*Attorneys for Defendant GoDaddy.com, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of January, 2025, I electronically filed the

foregoing using the CM/ECF system which will send the notifications to all parties below:

| | |
|---|---|
| Obadiah O. Kegege<br>*Pro Se*<br>P.O. Box 1153<br>Greenbelt, MD 20768<br>Tel:  (832) 656-4275<br>Obadiah_ke@hotmail.com<br><br>*Pro Se*<br><br>John Edward McCann , Jr<br>Miles and Stockbridge PC<br>100 Light St<br>Baltimore, MD 21202<br>(410) 385-3586<br>jmccann@milesstockbridge.com<br><br>and<br><br>Brianna Diane Gaddy<br>Miles & Stockbridge PC<br>100 Light Street<br>Baltimore, MD 21202<br>(410) 727-6464<br>bgaddy@milesstockbridge.com<br><br>*Counsel for Defendant Dynadot LLC* | Stevan H. Lieberman<br>Greenberg & Lieberman<br>1775 I St. NW, Suite 1150<br>Washington, D.C. 20006<br>Tel:  (202) 625-7000<br>partners@aplegal.com<br><br>*Counsel for Defendant Tucows Inc.* |

*s/Chad E. Kurtz*
Chad E. Kurtz

20