IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| **Obadiah Oseko Kegege,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Case No.: 8:20-cv-01066-TDC |
| ) | |
| **Namesilo, LLC,** *et al.,* ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF DYNADOT, INC.'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Defendant Dynadot Inc. ("Dynadot") (formerly known as and sued herein as Dynadot LLC) ("Dynadot") hereby submits this Memorandum in Support of its Motion to Dismiss the Third Amended Complaint (ECF No. 71) filed by Plaintiff, Obadiah Oseko Kegege ("Plaintiff" or "Kegege").

**INTRODUCTION**

Dynadot is a domain registrar for another Defendant's website that Plaintiff claims contained defamatory statements regarding him. Based solely on this allegation, Plaintiff's Third Amended Complaint[1] brings two (2) claims against Dynadot for (1) Conspiracy against Rights under 18 U.S.C. § 241 (Count VI) and (2) Neglect to Prevent under 42 U.S.C. § 1986 (Count VII). (*Am. Compl.*, ¶¶ 66-81).

As explained below, Plaintiff's claims against Dynadot fail to state a claim upon which relief can be granted because: (a) Dynadot is statutorily immune to any such liability under the Communications Decency Act, 47 U.S.C. § 230 (the "CDA") and (b) Dynadot's alleged conduct

---

[1] Citations to the Third Amended Complaint ("Amended Complaint") appear herein as "*Am. Compl.*"

1

is not actionable under either of the two federal statutes that Plaintiff invokes in Counts VI and VII of the Third Amended Complaint. Furthermore, this Court need not even reach the viability of those claims because Dynadot is not subject to personal jurisdiction in this judicial district under either the Maryland Long Arm Statute or the Fourteenth Amendment of the United States Constitution. Accordingly, this Court should dismiss the claims against Dynadot for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(2) or, in the alternative, for failure to state a claim upon which relief can be granted pursuant to FRCP 12(b)(6).

## I. Motion to Dismiss for Failure to State a Claim pursuant to FRCP 12(b)(6)

The applicable standard and legal basis for Dynadot's Rule 12(b)(6) Motion are explained more fully in Defendant GoDaddy.com, LLC,'s ("GoDaddy's") Motion to Dismiss the Third Amended Complaint (ECF No. 76).[2] Like GoDaddy, Dynadot is alleged to be a "Domain Registrar of Record" for one of the websites – *i.e*. Exposecheaters.com – that allegedly published defamatory statements about the Plaintiff. (*Am. Compl*., ¶¶ 2, 9). While Plaintiff does not and cannot allege that Dynadot is the publisher of the alleged defamatory statements, he joins Dynadot to the suit based solely on the theory that after allegedly learning of Plaintiff's objection to the statements about him appearing on Exposecheaters.com, Dynadot failed to take action to "unmask" and "stop" the alleged owner of website (*i.e*., Defendant Scott Bernstein) from continuing to publish the allegedly defamatory content on his website. (*Am. Compl.,* ¶¶ 2, 69, 79). Based on solely these allegations, Plaintiff seeks to impose liability on Dynadot for alleged "conspiracy against rights" (Count VI) and "neglect to prevent" (Count VII).[3]

---

[2] For the sake of convenience and brevity, Dynadot adopts and incorporates herein by reference the legal arguments set forth in GoDaddy.com, LLC,'s Memorandum in Support of its Motion to Dismiss ("GoDaddy Brief"). Alleged facts set forth in Amended Complaint relating to Dynadot as pertinent to this Motion are discussed herein.

[3] While GoDaddy is named as a defendant in all seven (7) counts of the Third Amended Complaint, the only counts directed against Dynadot are Counts VI and VII. To the extent that Plaintiff intended to include Dynadot in the other five (5) Counts – which he plainly did not do – then GoDaddy's legal arguments as to those other claims would apply

2

For reasons set forth in GoDaddy's Brief, both of Plaintiff's claims against Dynadot are barred as a matter of law by the CDA. Under the CDA, "[n]o provider or user of interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *Id*. § 230(c)(1). The CDA further states that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id*. § 230(e)(3). The immunity afforded by the CDA, which reflects Congress's "policy choice . . . not to deter harmful online speech through the . . . route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages" *Zeran v. Am. Online, Inc.* 129 F.3d 327, 330-31 (4th Cir. 1997), is "broadly construed." *Universal Commc'n Sys., Inc. v. Lycos, Inc.,* 478 F. 3d 413, 419 (1st Cir. 2007).

Here, this immunity clearly applies to Dynadot and bars both of Plaintiff's claims against it. Plaintiff does not and cannot allege that Dynadot created or published the allegedly-defamatory or otherwise harmful content on the website at issue. Instead, Dynadot is being sued solely as an online intermediary that served as the registrar of a website that contains the allegedly-improper content. Causes of action that attempt to hold mere conduits of transitory communications between a website and a user liable as the speaker or publisher of content posted on said website are barred by the CDA. Furthermore, while plaintiff vaguely alleges in wholly conclusory fashion that Dynadot failed to "stop/address the torts being committed by [its] Domain Registrant[]" (*Am. Compl.,* ¶79), Plaintiff fails to allege any facts from which plausibly infer what steps Dynadot could or should have taken or any duty to do so.

Moreover, Count VI alleging "Conspiracy against Rights" under 18 U.S.C. § 241 fails as matter of law because there is no private cause of action under that criminal statute. Similarly,

---

equally to Dynadot and justify dismissal as well. But, based on the face of pleading as written, Dynadot addresses herein only the two counts directed against it.

Count VII alleging Neglect to Prevent under 42 U.S.C. § 1986 fails, among other reasons, due to Plaintiff's failure to plausibly allege a predicate civil rights violation under Section 1985. Thus, Plaintiff's claims against Dynadot fail as a matter of law and should be dismissed pursuant to FRCP Rule 12(b)(6).

**II.  Motion to Dismiss for Lack of Personal Jurisdiction pursuant to FRCP 12(b)(2)**

Unlike a Rule 12(b)(6) motion in which the movant is limited to the well-pled facts of the complaint, motions to dismiss under Federal Rules 12(b)(2) and (b)(3) may be supported by jurisdictional facts proffered by the Defendant. *Grayson v. Anderson,* 816 F.3d 262, 269 (4th Cir. 2016). Ultimately, however, the jurisdictional question "is one for the judge, with the burden on the *plaintiff* ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (emphasis added); *see also Pinner v. Pinner*, 467 Md. 463, 477 (2020) (stating "the plaintiff bears the burden of establishing personal jurisdiction," and must do so by making a "*prima facie* showing of personal jurisdiction by a preponderance of the evidence").

   **A.  Dynadot is not subject to Personal Jurisdiction in Maryland.**

The Fourteenth Amendment's Due Process Clause limits a state court's authority to exercise jurisdiction over a defendant. U.S. CONST. AMEND. XIV § 1; *Bristol-Myers Squibb Co. v. Superior Ct. of California*, *San Francisco Cty.*, 582 U.S. 255, 262 (2017). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). A federal district court may exercise personal jurisdiction over a defendant only when jurisdiction accords with the forum state's long-arm statute, ***and*** application of the long-arm statute comports with the due process clause of the

4

Fourteenth Amendment. *See Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009); Fed. R. Civ. P. 4(k).

Maryland's long-arm statute, Md. Code Ann. Cts. & Jud. Proc. § 6-103(b) (the "Long-Arm Statute"), authorizes "personal jurisdiction over a person, who…"

> (1) Transacts any business or performs any character of work or service in the State; (2) Contracts to supply goods, food, services, or manufactured products in the State; (3) Causes tortious injury in the State by an act or omission in the State; (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State; (5) Has an interest in, uses, or possesses real property in the State; or (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

The reach of Maryland's Long-Arm Statute is coextensive with the limits of personal jurisdiction under the Fourteenth Amendment's Due Process Clause. *See Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 15 (2005). The constitutional and statutory inquiries, though distinct, may be evaluated in tandem. *Id.* at 22 ("[O]ur statutory inquiry merges with our constitutional examination."). Thus, to determine whether a court has personal jurisdiction over a defendant under Maryland law, courts conduct a "coextensive constitutional and statutory analysis [which] is a fact-intensive inquiry." *Pinner*, 467 Md. at 481.

Under the Fourteenth Amendment, a defendant must have "minimum contacts" with the forum state to ensure that the exercise of jurisdiction complies with due process and does not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Two kinds of personal jurisdiction may arise based on a party's minimum contacts: general jurisdiction and specific jurisdiction. *Bristol-Myers Squibb Co.*, 582 U.S. at 255-56.

5

When a court has general jurisdiction over a defendant, the court may hear all claims against the defendant, regardless of whether they are related to the defendant's activities in the forum state. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). "To establish general jurisdiction, the defendant's activities in the State must have been 'continuous and systematic.'" *Carefirst of Maryland, Inc., v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). The Supreme Court has reaffirmed that because general jurisdiction is "sweeping," only a narrow set of affiliations with a forum state, rendering the party "essentially at home" in the state, will allow a court to exercise general jurisdiction over a defendant. *See Ford Motor Co.*, 592 U.S. at 358 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–24 (2011)).

Federal courts also may exercise specific, or "conduct-linked," personal jurisdiction over a defendant. *See Ford Motor Co.*, 592 U.S. at 358. "Adjudicatory authority is 'specific' when the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Goodyear*, 564 U.S. at 923–24 (quoting *Helicopertos Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.8 (1984)). "In other words, 'the defendant's contacts with the forum state form the basis for the suit[.].'" *Pinner*, 467 Md. at 480 (quoting *Beyond Sys.*, 388 Md. at 26).

Application of these principles here demonstrates that Dynadot is not subject to either general or specific personal jurisdiction in this case.

### *1. Lack of General Jurisdiction*

As explained in the Declaration of Dynadot's General Counsel, Alexander Levit,[4] Dynadot Inc. (f/k/a Dynadot LLC) is a corporation organized and existing under the laws of California, with

---

[4] Mr. Levit's Declaration is attached hereto as **Exhibit A.**

its principal place of business located in San Mateo, California. (*Exh. A*, *Levit Decl.*, ¶ 3).[5] Dynadot does not now and has never maintained an office in Maryland and employs no one in Maryland. (*Id.*, ¶ 6). Dynadot is not registered to do and does not transact business in Maryland and, therefore, does not maintain a registered agent for service of process in Maryland. (*Id.*, ¶¶ 7-8); *see* Md. Cts. & Jud. Proc. Ann. § 6-103(b)(i). Furthermore, Dynadot does not contract to supply goods or services in Maryland, does not own, rent, use or possess any real estate in Maryland, and does not contract to insure or act as surety for any person or obligation in Maryland. (*Id.*, ¶¶ 9-11); *see* Md. Cts. & Jud. Proc. Ann. § 6-103(b)(ii), (v) & (vi). Finally, Dynadot does not regularly do or solicit business or engage in any other persistent course of conduct in Maryland or derive substantial revenue from goods, food, services, or manufactured products used or consumed in Maryland. (*Id.*, ¶ 12); *see* Md. Cts. & Jud. Proc. Ann. § 6-103(b)(iv).

Based on these facts, and in the absence of any allegation to the contrary in the Amended Complaint, Dynadot cannot be said to be "at home" in Maryland as necessary to subject it to general personal jurisdiction in this judicial district. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402412-13 (2017) (acknowledging that a court's exercise of general personal jurisdiction over a corporation in a state where the corporation is neither incorporated nor has its principal place of business will only be warranted in "exceptional cases" where the defendant's contacts are "so substantial" that the defendant is "at home" in the state).

### 2. *Lack of Specific Jurisdiction*

With respect to specific jurisdiction, the only alleged unlawful act or omission by Dynadot that caused him injury was its alleged failure to stop Defendant Bernstein from continuing to publish the alleged defamatory statements on his website. Plaintiff does not and cannot allege,

---

[5] While prior to 2023, Dynadot LLC was a California limited liability company. On January 1, 2023, Dynadot LLC converted to a Dynadot Inc. – a California corporation. (*Id.*, ¶ 4).

7

however, that the tortious injury he purportedly sustained in Maryland was caused by an act or omission by Dynadot in Maryland. *See* Md. Cts. & Jud. Proc. Ann. § 6-103(b)(iii). There is no allegation, nor could there be, that Dynadot had a presence in Maryland at all, much less that its alleged act of registering Defendant Bernstein's website or failing to stop him from publishing the alleged defamatory statements took place in Maryland.

To the extent that in the absence of any such allegation, Plaintiff's vague and conclusory pleading could be construed as alleging that Dynadot caused tortious injury to Plaintiff in Maryland by an act or omission outside the State, this too would be insufficient under the Long Arm Statute *Id*., § 6-103(b)(4). If so invoked by the Plaintiff, that subsection of the Long Arm Statute requires that Dynadot also "regularly do or solicit business or engage in any other persistent course of conduct in the State or derive substantial revenue from goods, food, services, or manufactured products used or consumed in the State." *Id*.; *Dring v. Sullivan*, 423 F.Supp.2d 540, 546-47 (D. Md. 2006). As detailed above in the context of general jurisdiction, none of those statutory criteria apply to Dynadot. (*Exh. A*, *Levit Decl*., ¶ 12).

From a constitutional perspective, merely serving as the registrar of Bernstein's website from its office in California cannot give rise to specific jurisdiction over Dynadot in Maryland. *See Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (maintenance of public website is not sufficient, without more, to establish personal jurisdiction). Similarly, Dynadot cannot be said to have purposefully availed itself of the Maryland forum based on the highly attenuated and random connection that the person injured by the allegedly defamatory statements on Bernstein's website happened to reside in Maryland. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.");" *Ford Motor Co.*, 592 U.S.

at 358.  Nor can it be said that Plaintiff's claims against Dynadot arise out conduct by Dynadot directed to the forum state. *See Bristol-Myers Squibb Co.*, 582 U.S. at 255-56. *; UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 354 (4th Cir. 2020).  In short, haling Dynadot into this Court on these alleged would not be constitutionally reasonable. *See In re Sanctuary Belize Litig.*, 409 F. Supp. 3d 380, 395 (D. Md. 2019).

### CONCLUSION

**WHEREFORE,** Defendant Dynadot, Inc. respectfully requests that this Court dismiss Dynadot and all claims asserted against it from this case.

January 10, 2025                                        Respectfully submitted,


       */s/ John E. McCann, Jr.*
John E. McCann, Jr. (Fed. Bar No. 10028)
e-mail: jmccann@milestockbridge.com
Brianna Gaddy (Fed. Bar No. 22086)
e-mail:  bgaddy@milesstockbridge.com
**MILES & STOCKBRIDGE P.C.**
100 Light Street
Baltimore, Maryland 21202
Telephone:     (410) 727-6464
Facsimile:     (410) 385-3700

*Counsel for Defendant, Dynadot, Inc.*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 10th day of January, 2025, a copy of the foregoing has been served upon all counsel of record via the Court's ECF system and via U.S. mail postage pre-paid and via electronic mail to the Plaintiff as follows:

> Obadiah Oseko Kegege
> P.O. Box 1153
> Greenbelt, MD 20768
> Email: obadiah_ke@hotmail.com

>> */s/ John E. McCann, Jr.*_____
>> John E. McCann, Jr. (Fed. Bar No. 10028)